FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   SEP 3 0 2015   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH CAVANAUGH,

              Plaintiff,

-against-

**OPINION AND ORDER
13-CV-3389 (SJF)**

COUNTY OF NASSAU, GEORGE SKAE and
STEVEN O'MALLEY, in their individual and
official capacities,

              Defendants.
----------------------------------------------------------X
FEUERSTEIN, District Judge:

      Defendants County of Nassau (County), George Skae (Skae) and Steven O'Malley (O'Malley) (collectively, "defendants") move for summary judgment under Federal Rule of Civil Procedure (Rule) 56 to dismiss the complaint of plaintiff Joseph Cavanaugh's (plaintiff) for failure to state a claim of gender discrimination. Because the Court finds that plaintiff has failed to state a *prima facie* case of gender discrimination or retaliation, defendants' motion is **GRANTED** and the complaint is dismissed.

I.    Factual Background

      Plaintiff works at the Nassau County Correctional Center ("jail") in East Meadow, New York as a corrections officer (officer) for the Nassau County Sheriff's Department (Sheriff's Department), where he has been employed since 1991. Plaintiff's Rule 56.1 Counterstatement of Material Facts (Pl.'s 56.1 Stmt.) ¶ 1. The jail is made up of two (2) compounds, known as the north and south complexes, each of which has a medical unit. Pl.'s 56.1 Stmt. ¶ 7. The north complex medical unit consists of the 832 building ("832 building") and a structure attached to the main building known as the "satellite." *Id.* The south complex, the "Core," has its medical unit in the "D building." *Id.* Inmates housed in the north complex are treated in the 832 building

and inmates housed in the south complex are treated in the D building. *Id.* Female inmates are exclusively housed in the south complex and receive medical treatment in the Core D building. *Id.*

Officers are assigned to the medical unit based upon their seniority, however, according to the jail's standard operating procedure, once an officer is assigned to the medical unit, the supervising sergeant posts the officer to one (1) of four (4) daily assignments, Security Desk, Treatment Post, Transport, and "The Bubble." *Id.* at ¶ 10. Assignments are made according to daily staffing needs, and seniority is not considered. *Id.* at ¶¶ 10, 14, 31. Medical unit officers may be moved at any time during a shift as necessary, within the sergeant's discretion. *Id.* at ¶¶ 9, 14. The sergeant attempts to accommodate an officer's preference, and no officer is permanently assigned to any of the four (4) daily assignments. O'Malley Aff. ¶¶ 11.

The Security Desk post requires electronically controlling access to the medical unit, and updating a logbook as inmates come and go. *Id.* at ¶ 10. The Treatment Post requires the officer to escort inmates to the medical area, accompanying a nurse during their evening rounds in the Core, or waiting in the hall of the 832 Building while a clinician treats an inmate. *Id.* at ¶ 11. The Transport post involves inmate transport by vehicle to hospitals and requires that one of the officers be the same sex as the inmate. *Id.* at ¶ 12. The fourth assignment is called the "Bubble," and requires the officer to secure and control access to the area. *Id.* at ¶ 13.

It is undisputed that officers have different assignment preferences and opinions as to which posts are favorable assignments. *Id.* at ¶ 22. For example, some officers prefer the hospital transport assignment because it allows them to leave the jail. *Id.* at 43. Post assignments have no bearing on pay. *Id.* at ¶ 22.

Defendant Skae who has worked in the jail starting in July 1988, and was assigned to the medical unit in 1998, was plaintiff's supervising sergeant from 2011, until he retired in December 2013. *Id.* at ¶ 6. Defendant O'Malley, who has been plaintiff's current direct supervising sergeant since February 2011, started working as a corrections officer in April 1989, and was assigned to the medical unit in 1998. Pl.'s 56.1 Stmt. ¶¶ 4, 5. His supervisory duties include assigning officers to provide security in the unit and to transport inmates to the Nassau University Medical Center (hospital). *Id.*

In January 2003, Plaintiff was assigned to work in the in the jail's north complex medical unit, in either the satellite building or the 832 building, working Monday through Friday from 5:30 a.m. to 1:30 p.m. one week, and from 1:30 p.m. to 9:30 p.m. the next, in alternating weeks. *Id.* at ¶¶ 2, 11. In his twenty-four (24) year career at the jail, he has worked all four (4) posts, and has never been rejected post for a post that he has requested in the medical unit. *Id.* at ¶¶ 15, 18.

## A. Vacation, Overtime

On January 1 of each year, the medical unit officers' names are placed on an overtime list in order of seniority. *Id.* at ¶ 23. The overtime list is updated every day, and when overtime becomes available, such as when an officer calls in sick, the hours are offered to the officer with the least amount of overtime. *Id.* It is undisputed that the "list is kept in strict order," and no officer, male or female, has been selected for overtime out of turn. *Id.* at ¶ 83. If an officer declines an offer of overtime, he will not earn overtime pay that day. *Id.* at ¶ 23.

It is also undisputed that plaintiff "almost never signs the overtime request signup sheet or accepts overtime when his name comes up on the [o]vertime [l]ist" *Id.* at ¶ 36. In 2011, plaintiff signed up for overtime one (1) time. *Id.* at ¶ 37. He did not sign up for overtime between January 1, 2012, and June 1, 2012. *Id.* at ¶ 38.

3

Officers accrue one half-day (1/2) of vacation time every two (2) week pay period and may "bank" or store unused vacation days at the end of the calendar year for use the following year. *Id.* at ¶ 27. On January 1 of each year, each officer may select, in order of seniority, four (4) weeks of reserved vacation in blocks of five (5) days and during the second round, each officer may select two (2) additional five (5) day blocks of time, which is also based upon seniority. *Id.* at ¶ 28. If an officer chooses to return reserved time, the entire five (5) day block must be returned, but if no other officer takes the returned time, any officer who signed up as an alternate may choose single days from the block. *Id.* at ¶ 29.

### B. Factual Basis of Gender Discrimination Claims.

Plaintiff started work in the security desk from 5:30 a.m. to 1:30 p.m. starting in January 2003, which he alleges is a favorable post usually staffed by senior officers. Pl.'s Compl. 4, ¶ 19–20. In September 2005, the Sheriff's Department assigned officer Kathleen Lyons to the medical unit. Pl.'s Compl. 3, ¶ 13. Plaintiff alleges that Lyons, and other female officers were able to secure positions in the jail's medical unit, although they were less senior than males assigned to the medical unit. Pl.'s Compl. 3, ¶¶ 14–15. Plaintiff alleges that, since Lyons was hired, he was assigned to less desirable posts, such as hospital Transport. Pl.'s Compl. 4, ¶¶ 20. Like any other officer, Lyons was not given a permanent assignment within the medical unit. Pl.'s 56.1 Stmt. 47.

He complained to his superiors on a monthly basis regarding what he considered "preferential treatment" of female officers. Pl.'s Compl. 4–5, ¶¶ 21–22. His superiors did not address his complaints, and beginning in 2007, he faced increased scrutiny and criticism from Sergeant Arthur Seaman. Pl.'s Compl. 5, ¶ 23.

In 2009, the Sheriff's department paired officer Lyons with officer Linda Mayo, whom he felt was able to select the favorable assignments. Pl.'s Compl. 5, ¶ 25. Officer Mayo was

allegedly not reprimanded for neglecting her duties, such as answering calls and responding to alarms, while male officers were reprimanded for the same infractions. Pl.'s Compl. 6, ¶ 26.

In May 2011, the jail conducted a mass surprise search of the inmates' cells, a "shakedown," which plaintiff considers an undesirable assignment. Pl.'s Compl. 5, ¶ 27. Lyons did not participate. Pl.'s Compl. 6, ¶ 28. That same month, plaintiff requested that he be allowed to return a partial block of unused vacation time, which was denied. Pl.'s Compl. 6, ¶ 31. In June 2011, O'Malley permitted Lyons to return a block of unused vacation time. Pl.'s Compl. 6, ¶ 34.

On November 21, 2011, plaintiff filed a complaint with the New York State Division of Human Rights (DHR) and the Equal Opportunity Employment Commission (AEEOC) alleging gender discrimination and retaliation for complaining to his supervisors. Dec. O'Hara, Ex. A, Aff. Cavanaugh ¶ 6. On May 18, 2012, after its investigation, the DHR determined that probable cause existed to believe that the Sheriff's Department engaged in gender discrimination and retaliation. *Id.*

In January 2012 O'Malley and Skae repeatedly assigned plaintiff to the Treatment Post, which plaintiff considered an undesirable post. Pl.'s Compl. 7–8, ¶¶ 41–42. He complained to his superiors that "due to his level of seniority," he should not be assigned to the Treatment Post. Pl.'s Compl. 8, ¶ 44.

On March 26, 2012, Seaman pointed a canister of mace at plaintiff's face, and asked him whether the nozzle was clogged. Pl.'s Compl. 8, ¶ 45. Plaintiff filed an internal affairs complaint, which was dismissed because the investigation concluded that Seaman was joking. Pl.'s Compl. 8, ¶ 46.

In April 2012, an unrelated inmate incident occurred which resulted in officers' reassignment to less desirable positions. Pl.'s Compl. 8–9, ¶47. O'Malley allegedly told these

5

officers that their reassignment was necessary because of plaintiff's discrimination complaints. *Id.*

Plaintiff now works at the Security Desk in the satellite building, which he considers a desirable assignment, and works the 4:00 p.m. to 12:00 a.m. shift. Pl.'s 56.1 Stmt. ¶¶ 3, 47.

## II. DISCUSSION

Defendants move under Rule 56 to dismiss plaintiff's claims under Title VII, Section 1983, and New York State Executive Law, Human Rights Law. In substance, they argue that, after discovery, plaintiff has failed to adduce any evidence that he suffered an adverse employment action, or circumstances giving rise to an inference of discrimination, and therefore, has failed to state a prima facie case of discrimination and retaliation. Def.'s Br. 18–30. For the reasons that follow, the Court agrees, and grants defendants' motion for summary judgment.

### A. Summary Judgment Standard.

A court may grant summary judgment if there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting FRCP 56(a)). Thus, where the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact, the moving party is entitled to judgment. *Williams v. R.H. Donnelly Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.*; *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 137 (2d Cir. 1998). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If there is any evidence in the record from which a reasonable inference may be drawn in favor

of the non-moving party on a material issue of fact, summary judgment is improper. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).

A "genuine" issue of fact exists only if the "evidence [presented] is such that a reasonable jury could return a verdict for the nonmoving party." *Giodano v. City of New York*, 274 F.3d 740, 746-47 (2d Cir. 2001). "[A]ttempts to twist the record do not create a genuine issue of material fact for a jury." *Kim v. Son*, No. 05 Civ. 1262, 2007 WL 1989473, at *6 (E.D.N.Y. July 9, 2007). Therefore, "where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). In addition, "conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996). Finally, FRCP 56(c) mandates that all facts under consideration in a motion for summary judgment be directly supported by proof in admissible form.

## B. Title VII

Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. 2000e-2(a)(1). It prohibits not only "tangible" or "economic" discrimination, but also discrimination which renders a work environment hostile or abusive. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).

In the absence of direct evidence of discrimination, "the court reviews the record under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)," which requires a plaintiff to first "prove by a preponderance of the evidence, a *prima facie* case of discrimination or unlawful retaliation by the employer." *Rosinski v. Amer. Axle & Mfg., Inc.*, 663 F. Supp. 2d 197, 203 (W.D.N.Y. 2009). "If plaintiff establishes a *prima facie* case, the

burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* (citing *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 446-47 (2d Cir. 1999)). In the third step of the *McDonnell Douglas* analysis, the burden shifts back to plaintiff to demonstrate that the proffered reason was not the actual reason for the employment decision, and that discrimination was. *Id.* at 203–04.

"To establish a *prima facie* case of gender-based disparate treatment, plaintiff must show that: (1) [he] belongs to a protected class; (2) [he] was performing her duties satisfactorily; (3) [he] suffered an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of discrimination on the basis of her membership in that class." *Id.* at 204 (citing *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)). "Claims of retaliation for engaging in protected conduct under Title VII are examined under the *McDonnell Douglas* burden shifting test." *Davis v. NYS Dep't of Corr.*, No. 10 Civ. 6641, 2015 WL 3833582, at *2 (W.D.N.Y. June 17, 2015) (citing *McDonnell Douglas*, 411 U.S. at 802). To make out a prima facie case of retaliation under Title VII, plaintiff must demonstrate: "'(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Swift v. Countrywide Home Loans, Inc.*, 770 F. Supp. 2d 483, 489 (E.D.N.Y. 2011) (quoting *Feingold*, 366 F.3d at 156). Plaintiff has not established a *prima facie* showing of gender discrimination or retaliation for two reasons.

First, nothing in the record suggests that plaintiff suffered an adverse employment action. "In the discrimination context, an adverse employment action is a 'materially adverse change in the terms and conditions of employment' that is 'more disruptive than a mere inconvenience.'" *Clemente v. New York State Div. of Parole*, 684 F. Supp. 2d 366, 373 (S.D.N.Y. 2010) (citing *Galabya v. New York City Bd. of Ed.*, 202 F.3d 636, 640 (2d Cir. 2000)). "A materially adverse

change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Galabya*, 202 F.3d at 640 (citing *Crady v. Liberty Nat'l Bank and Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

Significantly, "[e]veryday workplace grievances, disappointments, and setbacks do not constitute adverse employment actions within the meaning of Title VII." *La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 211 (2d Cir. 2010). "Changes in assignments or duties that do not 'radical[ly] change' the nature of work are not typically adverse employment actions." *Weisbecker v. Sayville Union Free Sch. Dist.*, 890 F. Supp. 2d 215, 233 (E.D.N.Y. 2012) (quoting *Galabya*, 202 F.3d at 642).

Even in the best light, plaintiff's complaints of gender discrimination focus on his reassignment from posts, such as the Security Desk, to other assignments, *e.g.*, the Treatment Post or hospital transports, which he considers less desirable, Pl.'s Compl. 7–8, ¶¶ 41–42. The undisputed fact remains, however, that all four (4) assignments in the medical unit are substantially similar, and that temporary reassignment to one does not constitute a materially adverse change in the conditions of an officer's employment. All four (4) assignments pay the same. Pl.'s 56.1 Stmt. 3, ¶ 22. Plaintiff, as well as every other officer, must perform all four (4) assignments, based solely on daily staffing needs. *Id.* at ¶¶, ¶¶ 9, 10, 14, 15, 18, 31. It is undisputed that any difference between the daily assignments is purely subjective, and that officers have differing preferences. *Id.* at ¶ 22.

And, although plaintiff alleges that his temporary reassignment to the Treatment Post was a *de facto* demotion because it is reserved for less senior officers, he has failed to point to any *evidence* to support this allegation, relying only on his "belief" in the existence of a "common practice" of assigning jobs based on seniority. Pl.'s 56.1 Stmt. ¶ 14; Cavanagh Aff. 5, ¶ 15. This

unsubstantiated belief is insufficient to defeat summary judgment. *See, e.g., SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 138 (2d Cir. 2009) (*Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir.2004)). Likewise, his assertion that the different assignments carry different potential for overtime, thus rendering some assignments better than others, ignores the undisputed fact that he "almost never" signed up for overtime, and declined it when offered. Pl.'s 56.1 Stmt. ¶ 36. In sum, the fact that he was temporarily reassigned to what he considers undesirable daily assignments, or that he was given the 4:00 p.m. to 12:00 a.m. shift, Pl.'s 56.1 Stmt. ¶ 3, are not adverse employment actions because they did not "radically change" the nature of the work. *Weisbecker*, 890 F. Supp. 2d at 233 (internal quotations and citations omitted).

Second, plaintiff has failed to demonstrate circumstances that give rise to an inference of discrimination on the basis of his gender. "A showing of disparate treatment—that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Here, plaintiff has alleged numerous instances of favorable treatment of Lyons and Mayo, but has failed to introduce any evidence that would permit the Court to infer that he faced gender discrimination.

Initially, he complains that since Lyons was assigned to the medical unit, he was displaced, and not able to work at the Security Desk, his preferred assignment, even though he had greater seniority. Pl.'s Compl. 4, ¶ 20; Cavanaugh Aff. ¶ 5. He also complains that Lyons was excused from participating in a shakedown. Pl.'s Compl. 5–6, ¶¶ 27–28. However, it is undisputed that Lyons, like any other officer, including plaintiff, was allowed to state an assignment preference, and that every officer is required to work any assignment at the sergeant's discretion. Pl.'s 56.1 Stmt. ¶¶ 9, 14; O'Malley Aff. ¶¶ 11. Moreover, every officer is

required to report for shakedowns, and when too many report, the commanding officer has the discretion to send some back to their ordinary daily assignment. Pl.'s 56.1 Stmt. ¶¶ 68–72. In short, plaintiff has not adduced any evidence to show that Lyons, or any other female officer, received anything other than ordinary treatment.

And although not pleaded, he also asserts that officer Lyons was permitted to wear a more comfortable Class B, "Battle Dress Uniform" or "BDU," while transporting inmates to the hospital, whereas every other officer was required by the Sheriff's Department to wear a formal Class A uniform. Pl.'s Br. 3; O'Malley Dep. 38:3–42:11. Not only has plaintiff failed to demonstrate that any other female was allowed to wear a Class B uniform, but he has provided no evidence to suggest that he ever asked for, or was denied the ability to wear a Class B uniform on hospital transports. Moreover, Lyons was allowed to wear her cotton Class B uniform, at least initially, because she was allergic to wool, and the Sheriff's Department "ordered special [non-wool Class A uniforms] for her." O'Malley Dep. 38:11–40:6. Thus, the fact that Lyons was allowed to wear a Class B uniform does not permit an inference of gender discrimination here.

Plaintiff likewise complains that officers Lyons and Mayo were not reprimanded for neglecting their duties. Pl.'s Compl. 6, ¶ 26; Pl.'s Br. 4. The Court notes that "Title VII is 'a protection against unlawful discrimination and retaliation, not a vehicle for checking day to day decisions of [employers], particularly as they relate to hiring, firing, promoting, reprimanding, or evaluating their employees.' " *Brierly v. Deer Park Union Free School Dist.*, 359 F. Supp. 2d 275, 301 (E.D.N.Y. 2005) (quoting *Broderick v. Donaldson*, 338 F. Supp. 2d 30, 47 (D.D.C. 2004)). Again, plaintiff has not furnished the Court with any basis to infer that the Sheriff's Department reprimanded or failed to reprimand female officers disproportionately to their male peers. In the absence of such evidence, the Court finds no basis to infer any discriminatory basis

11

for the Sheriff's Department's failure to reprimand Lyons or Mayo.

Similarly, the Court has no evidence with which to compare the frequency of hospital transport assignments given to male versus female officers, to infer any discrimination from the fact that officers Mayo and Lyons were not given these assignments frequently. Pl.'s Br. 2–3; O'Malley Dep. 103:12–21. Indeed, it is undisputed that in the three (3)-year period preceding plaintiff's filing of this action, he was assigned only forty-eight (48) hospital transports of the four thousand three hundred twenty-five (4,325) that occurred. Pl.'s 56.1 Stmt. ¶ 46.

In sum, the Court finds that plaintiff has not made a *prima facie* showing of gender discrimination or retaliation under Title VII because he has failed to demonstrate that he suffered an adverse employment action in circumstances that give rise to an inference of discrimination. Consequently, plaintiff's claims under Title VII are dismissed. *E.g.*, *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

## C. Section 1983

Section 1983 provides that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983. Accordingly, "[b]y the plain terms of § 1983, two-and only two-allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980) (citing *Monroe v. Pape*, 365 U.S. 167, 171 (1961)).

"'An employee is denied her equal protection right to be free from gender discrimination when she is treated differently from other similarly situated employees, thus suffering 'disparate treatment because of gender.'" *Padilla v. Harris*, 285 F. Supp. 2d 263, 268 (D. Conn. 2003) (quoting *Annis v. Cnty. of Westchester*, 136 F.3d 239, 345 (2d Cir. 1998)). "In analyzing whether conduct was unlawfully discriminatory for purposes of § 1983, [the Second Circuit] borrow[s] the burden-shifting framework of Title VII claims." *Id.*; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 575 (S.D.N.Y. 2011) ("Employment discrimination claims under 42 U.S.C. § 1983, whether based on race, religion, or gender, are analyzed under the *McDonnell–Douglas* framework.").

For the reasons already articulated in this opinion, the Court finds that defendants have not deprived plaintiff of any federal right under Title VII. Accordingly, plaintiff's claims under Section 1983 are dismissed.

### D. New York State Law

Plaintiff initially brought claims against the County, as well as against defendants O'Malley and Skae under New York State Executive Law, Human Rights Law § 296. Pl.'s Compl. 11, ¶¶ 56, 57. Acknowledging that he did not file the requisite statutory notice, he abandons his claim against the County, and proceeds against O'Malley and Skae under Section 296[6], which authorizes suits against individuals who "aid, abet, incite, compel or coerce" discriminatory conduct. Pl.'s Br. 13. As plaintiff has failed to state a claim for gender discrimination, this claim must fail as well and the Court dismisses it claim for the reasons discussed in this opinion. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001) ("Plaintiffs' claims of discrimination under the Human Rights Laws of New York City and New York State are evaluated using the same analytic framework used in Title VII actions.") (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n.1 (2d Cir.2000)).

### III. CONCLUSION

For the foregoing reasons, defendants' summary judgment motion under Rule 56 of the Federal Rules of Civil Procedure is granted in full. Plaintiff's complaint is dismissed. The Clerk shall close the case.

**SO ORDERED.**

s/ Sandra J. Feuerstein
Sandra J. Feuerstein
United States District Judge

Dated: September 30, 2015
      Central Islip, New York